The case in line which is Bailey v. Chicago Mr. Flack May it please the Court, Joel Flack is on behalf of Appellant Eugene Bailey. This appeal raises several claims based on Mr. Bailey's detention as a suspect in the killing of Darian Albert. Mr. Albert was killed in a brutal fight outside of Fenger High School in 2009. An amateur video of the fight was made national news and as a result of individuals seeing the video and believing that they identified Mr. Bailey in it, Mr. Bailey was held by the police and interrogated and ultimately held for 23 days before the authorities released him after determining that they had the wrong person. This appeal raises several claims coming out of Mr. Bailey's detention. The first one I'll talk about is based on the probable cause hearing he was entitled to under Gerstein v. Pugh and County Riverside v. McLaughlin. Under those cases, an individual arrested without a warrant has to go before a neutral magistrate within a reasonable time. County Riverside sets 48 hours as a default reasonable amount of time. In Bailey's case, the defendants just made it under 48 hours. He was held for 46 hours and 45 minutes after his arrest before he went before a neutral magistrate who determined that there was probable cause to hold him. In percentage terms, that's 97% of the 48 hours. Mr. Plaxman, what difference could it make since the judge then ordered your client detained? One would think that the timing of going before the magistrate matters when the magistrate is going to let the accused out, but it's hard to see why it matters when the magistrate keeps the accused in. I have a couple of responses to that question. The first one is that we don't agree that there was probable cause. I know you don't agree with that, but the state judge found that there was probable cause. So what we know is that if Bailey had gone before the judge earlier, he still would have been detained. Another response is that the conditions of his detention would have been different. He was held in the police station in an interrogation room before going before the judge. Our contention is that the facts of that detention, where he was held in an interrogation room, incommunicado, chained to a wall, without ready access to a washroom, a jury could draw the inference that he was being held for an improper purpose to extract a confession. And had he been taken to a magistrate sooner, the police would not have held him under those conditions. So. With that, if you change it, I guess that's almost a separate thing. I don't know what you want to call it, but I guess maybe it wasn't reasonable to do that, just under any circumstance. To the extent it's a claim about his conditions of confinement before going before the neutral magistrate, that's, under this Court's opinion in Lopez v. City of Chicago, that's something governed by the Fourth Amendment and the standard of Gerstein in the city of Riverside. Another thing I would say about the question of harm, and this Court's opinion in Bridewell, which stated the rule that we're talking about, that had the plaintiff in that case gone before the magistrate sooner, it would not have made a difference, is that in this case, Mr. Bailey was ultimately released. So in Bridewell, the plaintiff was given credit for the time held before going to the magistrate. Here, there's no credit to be given because he was not prosecuted, he was not convicted. Finally, I would also argue, and pointing the panel to the concurring judge's opinion in Bridewell, for, at a minimum, nominal damages for a delay of going before the neutral magistrate, as required by Gerstein and County of Riverside. Well, we would look at all of the things that were going on, which is really kind of an amazing case here, where people who supposedly know Mr. Bailey and say it's identified someone else as Mr. Bailey, and that's a problem, but I think the police were finding lots of variations going on, and that's probably why the delay, that theoretically, at least, that would be to Mr. Bailey's advantage, trying to get it right, but unfortunately, before people turned and new people came up, and once they did identify Mr. Bailey in the paper, then people jumped forward and said, hey, that isn't him, and that's why he got out. This is a very sad case, from everybody's standpoint. Judge Rennie, I agree that continuing investigation is absolutely to Mr. Bailey's benefit, and that's ultimately why he was released. We have another claim that he should have been released sooner, but the point of that continuing investigation being done before the neutral magistrate determined probable cause, that is something that Gerstein and Conner Riverside say the police cannot do, that when they arrest without a warrant, they need to have flexibility to take the administrative steps incident to arrest, but they don't get extra time to do extra investigation to justify the arrest. Well, if they went in with what they had earlier, those two witnesses and ID, then that's where the probable cause comes in. I don't know if that's magistrate judges, that's probable cause. You've got two people that supposedly know the, in effect, the killer, and it turns out when others knew him better, I guess, then that's not him. To the extent the court disagrees with their argument on probable cause, that does weaken the argument under Gerstein. Our contention is that two individuals who watched this blurry video, and the district court stated that it reviewed the video carefully and repeatedly, and I invite the panel to do the same. Our contention is that it was too blurry for those individuals. Too what? Too blurry, that it was a handheld cell phone video, and viewing it, the face of the individual who these witnesses stated was Mr. Bailey is not clear enough to identify, that it's different than the single eyewitness cases that this court has ruled on, because the statements of those witnesses were statements from people who had not been present at the fight, who were only looking at this blurry video. But should the court disagree and say that that is sufficient probable cause, the delay is still a harm based on the conditions of how he was held. That the court's cases have recognized some time available to police to do investigation while someone is being held, but the conditions here, we believe, create an inference that he was held for an improper purpose of gaining a confession, an improper confession from him. I want to switch gears so I can at least briefly address the state law claims that we raised a claim for intentional infliction of emotional distress and for malicious prosecution, and ask the district court should it dismiss the federal claims that it relinquished jurisdiction of the state court claims and send them back to state court. This court has said that there is a presumption in favor of sending state court claims back to state court when there are no federal claims remaining. Here, we believe that the intentional infliction of emotional distress claim was a claim that was generally in state court because it's, because the state of Illinois has, state of Illinois courts have had so few cases about interrogations and intentional infliction of emotional distress cases, the state should have the opportunity to develop those, that there's a growing understanding of the dangers of false confessions, especially by minors. And Mr. Bailey here was 17, a senior in high school. And in our brief, we cited cases from other states accepting intentional infliction of based on coercive interrogations. And we believe that the Illinois courts, given the opportunity, would accept a similar claim in this case. Well, sure. That would have made it appropriate for the judge to relinquish jurisdiction, but not mandatory. And this is a highly discretionary judgment. Yes, it's a discretionary judgment, but it, but there is a presumption for relinquishing jurisdiction. I mean, there's, there's no doubt about the elements of the claim, either the malicious prosecution claim or the intentional infliction of emotional distress claim, those are well established under Illinois laws, so this isn't a novel or complex claim. Well, I would, I would, I would disagree and say that it is a novel claim because there are so few cases around situations like this and that the district court, the district court's analysis of the intentional infliction of emotional distress claim was simply, you know, interrogations are not inherently outrageous or extreme and therefore neither is this one. But I think that a more careful analysis could have, would have showed that reasonable minds could differ about whether their, the state law might recognize such a claim. And that's why we believe the court should have not exercised discretion and held on to those claims, should have relinquished them to the district court. If there's no more questions, I'll save my time for rebuttal. And there are several other claims in the brief, so I'll just say that we will roll eye on the briefing for those. Thanks. Thank you, Mr. Claxman. Mr. Hubbard. May it please the court. The district court promptly granted summary judgment to the defendants in this case. To begin, summary judgment was proper on Bailey's federal claims because the detectives had probable cause for Bailey's arrest and did not unreasonably delay his probable cause hearing. Detectives have probable cause because at the time they knew that Bailey had been involved in an earlier fight at school that day with one of the participants in the later after school fight that resulted in Mr. Albert's death. And two reliable eyewitnesses who knew Bailey independently identified him on the video as participating in Albert's death. Specifically Officer Massey and Darrell Bramlett both independently identified Bailey as the boy in the video who's wearing shorts who punched Albert before he died. And they did so without expressing any hesitation or doubt about their abilities to identify Mr. Bailey. Bramlett also told the police that he was present at the scene of the fight and Officer Massey specifically stated that she could recognize Bailey's face in the video. The detectives also did not unreasonably delay Bailey's probable cause hearing. Mr. Bailey acknowledges that he received a probable cause hearing within 46 hours of his arrest, which placed the burden on him to show that any delay in his probable cause hearing was for an improper purpose. But the undisputed evidence here shows that Mr. Bailey remained in police custody because the state's attorney's office wanted the detectives to continue their investigation of Mr. Bailey's role in the murder before filing those charges. And McLaughlin expressly recognizes the need for flexibility to allow state criminal justice systems to combine early pretrial procedures. Here in Cook County, the police cannot present a defendant for a probable cause hearing until the state's attorney has signed off on charges in a felony case. And because the detectives had probable cause for Bailey's arrest for Albert's murder, continuing to investigate his role in that crime while awaiting the state's attorney's office's charging decision did not violate the Fourth Amendment. In any event, even if this Court were to determine that the detectives somehow did violate the Fourth Amendment, the detectives would still be entitled to qualified immunity on those claims. That's because a reasonable officer in their position could have believed that the independent identifications from two witnesses based on the video provided probable cause. And a reasonable officer could also have believed that they were allowed to continue the investigation into Mr. Bailey's role in the crime for which he was arrested while awaiting the charging decision under this Court's decisions in Daniels and Shillolo. As to Mr. Bailey's state law claims, summary judgment was also proper on those claims. As an initial matter, the District Court properly exercised its discretion to retain supplemental jurisdiction over those claims. This Court, as is recognized, reviews the exercise of supplemental jurisdiction for abuse of discretion. And here the District Court properly recognized that the Court and parties had expended significant time and resources to litigate this case through discovery and summary judgment. And this Court has recognized that that is a solid basis for the exercise of discretion to exercise supplemental jurisdiction over state law claims. Bailey's claims also raise no novel issues of state law. Indeed, he makes no such argument regarding the novelty of this malicious prosecution claim and his intentional infliction of emotional distress claim merely requires this Court to apply well-settled elements of that cause of action to the particular fact of his case. Having properly exercised supplemental jurisdiction, the District Court properly granted summary judgment on the state law claims. As to Mr. Bailey's intentional infliction of emotional distress claim, Mr. Bailey adduced no evidence of extreme and outrageous conduct necessary to support that claim. The record, the undisputed facts on the record show that the detective spoke to Mr. Bailey for approximately 20 minutes over the course of his time in custody and ceased their interrogation of him the moment that he asked for a lawyer. Indeed, Bailey has alleged no misconduct or mistreatment by the detectives. And under Illinois law, legitimate law enforcement investigation is not a basis for an IIED claim, particularly where probable cause supported the arrest and prosecution. I'm... for what kind of claim? I'm sorry, intentional infliction of emotional distress. Using real words would help those of us who are generalists. My apologies, Your Honor. Intentional inflection of emotional distress. Summary judgment was also proper on Bailey's malicious prosecution claim. That was because probable cause existed for Mr. Bailey's arrest and for the commencement of the prosecution.  And as these reports arrived, the police and the State's Attorney's Office also received conflicting information from Darrell Bramlett, who continued to maintain that it was Bailey on the video, and from another caller, another Fanger student who called to say that he also saw Bailey on the video. Ultimately, the dismissal of charges against Bailey was the result of this continued investigation into these conflicting reports. And in addition, the State's Attorney's Office and not the police made the decision to prosecute and to continue the prosecution. And there's no evidence of any police misconduct that played a role in those decisions. In the process of just having him confined, was there any kind of a punitive thing? I don't remember the details of what his... how he was detained during this 48 hours. Mr. Bailey, there's video of his detention in the record, Your Honor, and Mr. Bailey was held in various interrogation rooms. He was held by himself, but he was, I don't believe handcuffed, but he was somehow shackled to the walls with a bench where he could rest. And he was allowed to go to the restroom if he called for someone to take him. He spent most of his time alone while the detectives were interviewing other witnesses and other suspects who they were keeping isolated from each other during the investigation. But he was taken care of. There's no allegation at all that he was mistreated other than being kept in an interrogation room at the station, rather than having been taken to Cook County lockups. I guess that's common practice, whatever they did with him. I believe so, Your Honor. There's really no testimony about the commonality of that practice, but there's certainly been no dispute that this was unusual for this situation. So barring any other questions, Your Honors, we would ask that this Court affirm the judgment below. Thank you. Thank you, Counsel. Anything further, Mr. Weissman? You have a few seconds, but not many. I just want to make clear that we do allege that there was mistreatment in the conditions in which he was confined in the interrogation rooms. That saying that he was handcuffed to the wall and could lay down on the bench, I think is, and that he was well taken care of, is belied by the videos which are in the record and show that being handcuffed to a wall and having to lay down on a bench is a very uncomfortable position to be in. And being left alone, I think the inference can be drawn, was intended to overbear his will and force him to confess. Thank you. Thank you very much, Counsel. The case is taken under advisement.